* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence or to rehear the parties or their representatives, the Full Commission affirms the Opinion and Award of the Deputy Commissioner in IC No. 421397 and dismisses PH-1242 as all matters relating to penalties have been settled.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement as:
 STIPULATIONS
1. The named Employer was uninsured on March 9, 2004.
2. The Employee's average weekly wage will be determined from an I.C. Form 22 Wage Chart to be provided by Defendant with supporting wage information.
 * * * * * * * * * * *
The Commission received the following depositions into evidence:
1. Dr. David Charles Miller dated August 12, 2005.
2. Dr. Gilbert Alligood dated August 24, 2005.
3. Denise Poland-Torres, PAC dated September 21, 2005.
4. Dr. Rinson Weathers dated September 27, 2005.
 * * * * * * * * * * *
The following were marked and received into evidence as:
 EXHIBITS
1. Stipulated Exhibit No. 1 — Pre-Trial Agreement.
2. Stipulated Exhibit No. 2 — IC Forms, payroll records, responses to interrogatories.
3. Stipulated Exhibit No. 3 — Plaintiff's Medical Records.
4. Defendant's Exhibit No. 1 — Insurance policies, pleadings, Plaintiff's time sheets, Plaintiff's resignation letter, Articles of Incorporation, medical records, discovery.
5. Defendant's Exhibit No. 2 — Photocopied picture of Plaintiff's workstation.
6. Defendant's Exhibit No. 3 — Photocopied picture of Plaintiff's workstation.
7. Defendant's Exhibit No. 4 — Photocopied picture of Plaintiff's workstation.
8. State's Exhibit No. 1 — Defendant's Articles of Incorporation.
9. State's Exhibit No. 2 — Defendant's ESC Report.
 * * * * * * * * * * *
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At all times relevant to these proceedings, All About Flowers, Inc., was a North Carolina corporation doing business as a florist shop. Janet Turner, secretary and treasurer of Defendant, and Arthur Turner, president of Defendant, were the sole owners of the shares of stock in All About Flowers, Inc. Janet Turner was the manager of the store, but was at home sick and awaiting surgery at the time of Plaintiff's alleged injury. Janet Turner and Arthur Turner were not named individually and were not served individually with notice of the penalty hearing that is consolidated with this claim for hearing.
2. On December 1, 2003, Defendant hired Plaintiff to answer the telephone, wait on customers, generate invoices and statements, key in data on the computer, make deposits, and write checks for the company.
3. In addition to Plaintiff, Defendant employed Deborah Bailey, Bruce Peaden, and Plaintiff's stepmother Mae Melton, who had been employed by Defendant one or two months earlier.
4. At the time of Plaintiff's alleged injury on March 9, 2004, Defendant had three or more employees and was subject to the Act. There was an employment relationship between Plaintiff and Defendant and the parties are subject to the Act. The Industrial Commission has jurisdiction of this claim.
5. Defendant did not maintain a policy of Workers' Compensation Insurance to cover its employees at the time of Plaintiff's alleged injury. Defendant has now complied with the penalty assessed by the Deputy Commissioner for failure to maintain workers' compensation insurance.
6. According to Employment Security Commission records, Defendant had three or more employees for the fourth quarter of 2000; the first, second, and fourth quarters of 2001; all four quarters of 2002; all four quarters of 2003; and all four quarters of 2004.
7. Prior to her employment with Defendant, Plaintiff had received medical treatment on numerous occasions for pain and tingling and numbness in her left upper extremity reaching to the fingers of her left hand documented back to November 1999.
8. Dr. Gilbert Alligood, Plaintiff's personal physician, saw Plaintiff on February 27, 2004 for complaints of pain in her left arm for the previous two weeks extending from her elbow to her hand, with numbness in her left hand. Dr. Alligood diagnosed the problem as tendinitis/lateral epicondylitis.
9. Plaintiff testified that she was injured on March 9, 2004 when she had to lean forward out of her chair to answer the telephone because of a tangled telephone cord and then when she sat back down in her chair, her body rocked back. She testified that she had a burning in her shoulder and tingling in her shoulder and left arm.
10. Plaintiff testified that she told her stepmother Mae Melton about the injury right after it happened; however, Ms. Melton testified that she could not recall any such conversation. The other employees on the job that day testified that they could not recall any incident or report of an injury.
11. Plaintiff testified that she did not work the day after the alleged injury. Plaintiff's time sheets show that she worked eight hours each of the two days after the alleged injury and was then out on March 12 and 13 with a notation on the time sheet that she had a doctor's note. The time records also show that Plaintiff worked March 15 through March 20 and March 22 through March 24 before she resigned on March 25.
12. Plaintiff testified that the picture of the phone in Defendant's Exhibit No. 4 was fair and accurate, but that it was twisted a little tighter on the date of her injury. Mr. Peaden testified that the phone cord was tangled like in the picture or maybe a little more.
13. Following the alleged injury and a couple days before Plaintiff's March 25 resignation, she testified that there was a problem with the computer at the store and that she got a friend to help her carry it out to a repair shop. Plaintiff testified that she only carried the keyboard and her friend carried the tower. Ms. Bailey testified that she saw Plaintiff carrying part of the computer and it was a large part. Ms. Bailey could not recall if it was the tower or the monitor, but did say that it was not flat like a keyboard.
14. Plaintiff did not immediately seek medical attention or notify her employer. Plaintiff said she filed a Form 18 at the suggestion of someone in the financial office of the hospital. Plaintiff's Form 18 was stamped as being received by the Commission on April 27, 2004. Plaintiff testified that she kept a copy of the Form 18 for herself and that she did not send one to anyone else. Defendant received written notice of the claim when Plaintiff's lawyer mailed a copy of the Form 18 to Defendant on May 17, 2004. Plaintiff did not mention any injury at work in her resignation letter, but did note her dissatisfaction with not being provided health insurance, 401-K, and a pay raise by Defendant.
15. Ms. Turner said she received a telephone call from someone who said they were from a medical providers office and asked if Plaintiff had suffered a work related injury while working there, and Mrs. Turner said she did not know what the caller was talking about.
16. After the telephone call, Ms. Turner asked Deborah Bailey, Bruce Peaden and Mae Melton if they knew anything about Plaintiff suffering an injury at work and they said no.
17. Plaintiff went to the emergency room on March 12, 2004 with complaints of left arm numbness and tightness in her chest. The hospital notes indicate Plaintiff denied any trauma and notes a one week history of numbness in the left arm from the elbow in which a doctor had told her may be tennis elbow or tendonitis. There is no record of Plaintiff reporting any injury at work at that visit.
18. Plaintiff's medical records indicate she has been complaining of left arm and hand numbness since 1999, that she had similar complaints in June 2002 following an assault in which she was struck in the head with a blunt object, that she complained of neck and shoulder pain in November 2002 that was diagnosed as muscle spasms, and that she complained of pain in her left arm from the elbow to the hand with numbness in the hand on February 27, 2004, which noted it was a recurrent problem for her and was diagnosed as tendonitis/lateral epicondylitis.
19. The nurse's notes from Plaintiff's March 12, 2004 emergency room visit indicate tennis elbow to the left arm and numbness starting in approximately 1980. Plaintiff denied any trauma and makes no mention of any injury at work according to Dr. Rinson Weathers. Dr. Weathers testified that he thought Plaintiff had a long running chronic problem based on her similar complaints since 1999. Dr. Weathers testified on cross-examination that he did not think that the telephone incident would have caused a herniated disk although he did say a degenerative condition could be aggravated by trauma. There is record of Plaintiff having a degenerative problem with her back in the medical records prior to the alleged injury at work.
20. In Dr. Miller's May 17, 2004 letter to Denise Torres, PAC, he notes that Plaintiff had a near fall in her yard on the Friday before Easter, which was April 9, 2004, and the jerking sensation caused her to have increased pain. On April 9, 2004, Plaintiff was seen by Ms. Torres at the Tarboro Clinic and was found to be suffering neck pain with radiculopathy for the first time.
21. Dr. David Miller saw Plaintiff on referral and he testified that "he did believe that her incident that she described that occurred at the store — All About Flowers store is compatible with her pain complaints as well as the disk herniation at the C5-6 level." Dr. Miller testified on cross-examination that Plaintiff did not tell him about seeing Dr. Weathers for arm numbness and that she told him that she had not been able to work since the date of the incident at work, which is contrary to her time sheets that are part of Defendant's Exhibit No. 1. Dr. Miller testified that his opinion was based on Plaintiff's report of the alleged incident and her report of pain as well as her indication that she had no significant previous problems.
22. When asked if Plaintiff's prior complaints and doctor visits that Plaintiff had not told him about would impact his opinion as far as her injury being caused by the telephone incident, Dr. Miller responded that it could. When asked if her telling him she could not work following the incident at work when her time sheets indicate she was able to work would impact his opinion, Dr. Miller responded, "I think it would — not as much as the other things you mentioned, such as the medical records that were not available to me."
23. The Full Commission finds that Plaintiff's testimony is not credible.
24. The Full Commission further finds that Plaintiff's answering a telephone with a tangled cord with her left hand while seated at her work desk was not an unexpected, unusual, or untoward occurrence and was not an interruption of the work routine, nor an introduction of unusual conditions likely to result in unexpected consequences. Plaintiff was performing her regular duties in the usual and customary manner.
25. Although, Plaintiff failed to provide Defendant with written notice of injury by accident within 30 days as required by the Act, Defendant has failed to show how they were prejudiced by having gotten written notice two months after the alleged injury.
 * * * * * * * * * * *
Based on the foregoing stipulations and findings of fact, the undersigned makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff failed to provide Defendant with written notice of injury by accident within 30 days as required by N.C. Gen. Stat. § 97-22. Defendant failed to show how the delay adversely affected their ability to investigate the claim.
2. Plaintiff has the burden of showing that the injury complained of resulted from an accident arising out of and in the course of the employment. Henry v. A.C. Lawrence Leather Co.,231 N.C. 477, 57 S.E.2d 760 (1950).
3. Plaintiff did not prove by the greater weight of the evidence that she sustained an injury on March 9, 2004 that resulted from an interruption of her normal work routine by the introduction of unusual conditions likely to result in unexpected consequences. Therefore, Plaintiff did not sustain an injury by accident arising out of or in the course of her employment with Defendant on March 9, 2004. N.C. Gen. Stat. § 97-2(6).
5. Plaintiff's claim, therefore, is not compensable under the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(6).
6. Defendant was required by the Act to have had workers' compensation insurance. Since Defendant has now complied with the penalties ordered by the Deputy Commissioner, the claim against Defendant in PH-1242 should be dismissed.
 * * * * * * * * * * *
Based on the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Plaintiff's claim is hereby DENIED.
2. The Industrial Commission's claim against Defendant in PH-1242 is Dismissed.
2. Each party shall pay their own costs.
This the __ day of October 2006.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_____________ PAMELA T. YOUNG COMMISSIONER